**HCDistrictclerk.com**        GRANT, OTIS vs. HARRIS COUNTY                6/13/2018
                               Cause: 201834687    CDI: 7   Court: 333

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|---|---|---|---|---|
| 80094347 | ORDER TRANSFERRING CASE TO ANOTHER DISTRICT COURT SIGNED | | 05/25/2018 | 1 |
| 80198498 | Civil Process Pick-Up Form | | 05/25/2018 | 1 |
| 80069089 | Plaintiff's Original Petition | | 05/23/2018 | 10 |

5/23/2018 10:13 PM
Chris Daniel - District Clerk Harris County
Envelope No. 24819410
By: Walter Eldridge
Filed: 5/23/2018 10:13 PM

CAUSE NO. _____

| | | |
|---|---|---|
| **OTIS GRANT,** | § § | **IN THE DISTRICT COURT** |
| PLAINTIFF, | § § | **HARRIS COUNTY, TEXAS** |
| VS. | § § | |
| **HARRIS COUNTY,** | § § | ____**JUDICIAL DISTRICT** |
| DEFENDANT. | § | |

**PLAINTIFF'S ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

**Preliminary Statement**

1. This lawsuit is an employment lawsuit brought to secure relief for retaliation and harassment (hostile work environment also HWE) under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Title VII).

2. Plaintiff, Otis Grant (Grant) intends to conduct discovery under Level 2 of the Texas Rules of Civil Procedure.

**Parties**

3. During all times mentioned in this petition Grant was an employee who engaged protected activity covered by Title VII. Grant is resident of Fort Bend County, Texas.

4. During all times mentioned in the petition, Defendant, Harris County, was and is still an employer, was and is a local governmental entity under the laws of the state of Texas. Defendant may be served through County Judge, Ed Emmett, at 1001 Preston, Houston, Texas 77002.

**Jurisdiction**

5. Jurisdiction is invoked pursuant to Texas Labor Code § 21.001 and 21.051, Rule 97(a) of the Texas Rules of Civil Procedure, and the right to sue notice by the U. S. Department of Justice

For Official Governmental Use Only - Do Not Disseminate to the Public: 80069089 - Page 1 of 10

1

dated March 1, 2018 and April 11, 2018 on Grant's 2011 to 2013 Title VII claims. All conditions precedent were met prior to bringing this lawsuit.

6.  Declaratory, injunctive, and equitable relief are sought pursuant to Title VII.

7.  Compensatory and punitive damages are sought pursuant to Title VII

8.  Costs and attorney's fees may be awarded pursuant to Title VII.

**Venue**

9.  This lawsuit properly lies in Harris County, Texas pursuant to the Texas Civil Practice and Remedies Code §15.006, because the unlawful employment practices and other misconduct were committed in this county.

**Factual Statement**

10. Grant was employed by Defendant as a Juvenile Supervision Officer ("JSO") from 2005 to 2013. During his employment, he received satisfactory to good performance evaluations.

11. For the first five years of employment, Grant did not have any problems with Defendant. However, in or about August or September 2011, Grant requested a reasonable accommodation due to his disability (diabetes). Many employees, including Samuel, knew Grant suffered from diabetes and some had seen his abnormally swollen legs. Specifically, Grant asked that he be permitted to elevate his feet and sit down for periods of time during work hours to reduce swelling in his ankles. He also requested JSO assignments that did not require a lot of walking or standing due to the swelling in his legs and feet.

12. Prior to Anthony Samuel ("Samuel") assuming the role as his direct supervisor, Grant's prior supervisor(s) had permitted him to work in areas that did not require a lot of walking and standing due to significant swelling in his legs and feet.

13. When Samuel became his supervisor, he permitted Grant to continue similar assignments

2

For Official Governmental Use Only - Do Not Disseminate to the Public: 80069089 - Page 2 of 10

and seemed very accommodating. This all changed after Grant reported Samuel to Samuel's supervisor, Aaron Beasley ("Beasley"). Grant had observed Samuel being openly hostile to and discriminating against African employees for a while. Samuel told Grant that he was going to get JSO Ekpin (African) fired. Ultimately Samuel was successful at getting Ekpin fired and continued his hostile treatment towards African employees.

14. In or about August 2011, after Grant spoke with Beasley about Samuel's treatment of African employees, Beasley said he would talk to Samuel. Soon after his talk with Samuel, Samuel began harassing and retaliating against him. Samuel started assigning Grant to floors that required him to walk and stand for long periods of time. Defendant revoked the accommodation that it had permitted for years in retaliation to Grant engaging in protected activity.

15. Beasley's alleged talk with Samuel only made it worse for Grant. Nothing was done to correct the problem. As such, Grant reported the retaliation to HR in writing. Rather than take remedial measures to correct the harassment and retaliation, HR began to retaliate as well. It permitted Grant's supervisors, Samuel, Beasley, and Gisselle Jones (now Robinson) to continue the retaliation and harassment.

16. In response to his December 2011 written complaint, HR Representative, Erica Owens allegedly conducted an investigation of the complaint. Owens did not take notes during the alleged investigation or request any signed statements from any of the witnesses in which she allegedly spoke with during the claimed investigation. Her report contained fabrications about Grant to support a no finding conclusion. HR Director, Matthew Shelton, oversaw the alleged investigation. It is worth noting that out of the hundreds of grievances and complaints involving unfair treatment, discrimination, and harassment that Defendant received from the juvenile probation department, only one or two had been substantiated over several years. This clearly

showed Defendant's investigative process was and is merely a sham to show minimal action taken on a complaint for purposes of litigation. Defendant repeatedly failed to investigate Grant's verbal complaints of retaliation and harassment that had been made to Beasley as early as August 2011. Verbal complaints and requests are treated differently by Defendant. Verbal requests and complaints are ignored in violation of Title VIII anti-harassment (HWE) complaints.

17.   In December 2011, Grant discussed JSO's with disabilities whose accommodations had not been revoked. To his knowledge, these employees had not engaged in protected activity. His accommodation would not have been revoked but for him reporting the discriminatory acts of Samuel and continuing to fight the retaliation after nothing was done to correct the treatment by Samuel.

18.   All but one of the multiple write-ups, intended to harass Grant for lodging a complaint of national origin discrimination, was given to him in 2012. In early 2013, Defendant created a letter summarizing the write-up and giving Grant a warning. Many facts relating to the write-ups cannot be explained or legitimate because they are blatant violations of other federal statutes like the FMLA and ADAAA. Interestingly, Grant had only one write-up in his file from 2005 to 2010. The repeated write-ups started in 2012 shortly after the alleged investigation was completed by Owens. Based on information and belief, the write-up did not comply with the Defendant's policy and were kept in this file longer than they should have been to build a file to terminate Grant. Defendant citied an unprecedented number of violations, shortly after HR received his complaint in November 2011. In 2012 alone, Grant received an unprecedented six (6) write-ups.

19.   In addition to the alleged violation of the call-in policy, Defendant began to strictly scrutinize the observation reports of juveniles who he supervised. Prior to reporting Samuel, Grant had not been disciplined for FMLA call-ins (which he had been exercising for years) and alleged

4

discrepancies with his observation reports. Typically, informal counseling was not included in the employee's file, but with Grant, Defendant included it and made it a part of the overall reason(s) to terminate him.

20. After the suspension in October 2012, Grant filed an EEOC Charge in November 2012, citing the suspension and the continued retaliation and harassment since reporting Samuel.

21. By November 2012, Defendant clearly had sufficient information to confirm what it already knew being that Grant needed an accommodation to reduce the swelling in his legs, feet, and ankles. For a little over a year by this time, Samuel and other supervisors had assigned Grant to floors that required substantial walking and standing on cement floors, causing him to limp in pain, his feet to swell and loss of feeling in part of his foot. This was done in retaliation for engaging in protected activity.

22. Notwithstanding the EEOC Charge, Defendant still did nothing to correct its unlawful actions or restore Grant's accommodation by permitting him to elevate his feet and take breaks periodically or assigning him to JSO stations that did not require much walking or standing.

23. Defendant was already on notice about Grant's diabetes which caused chronic swelling of the feet, ankles, and legs as early as 2007 and accommodated Grant without incident until he reported, Samuel for Title VII violations.

24. To eliminate any excuse for failing to reinstate his accommodation, Grant's physician wrote a letter to Defendant requesting a similar accommodation in March 2013. Defendant's ADA policy did not require a physician's note. However, making sure he had all bases covered, Grant told his physician that a letter may be helpful. It was not. Defendant ignored the letter and did not readily restore the accommodation.

25. An EEOC investigator came to Defendant's facilities to understand the reasons the

5

accommodation had been revoked and not reinstated. Near this time, Defendant appeared to approve the elevation of the legs and breaks every 15 minutes. It refused to reinstate his prior assignments. As late as July 2013, HR Director Shelton, claimed he needed more information to restore the accommodation. Yet, he did not request any additional information from Grant or his physician.

26. In the summer of 2013, Samuel placed Grant on Samuel's Facebook page and insinuated that Grant was not working. Samuel even commented on his post after another employee posted a comment. The picture showed Grant's feet elevated on a break. The Facebook post placed Grant in a bad light.

27. Grant reported the harassment to HR. After an investigation, Samuel was terminated. HR Shelton who met with Grant about the findings stated that he believed that firing Samuel would end his problems, clearly inferring that Shelton was fully aware that Samuel had been harassing and retaliating against Grant for some time. Rather than look at prior write-up in light of Samuel's unethical and blatant violation of policy, Shelton did nothing and approved the termination of Grant a few months later.

28. The accommodations revoked by Defendant in retaliation for him reporting Title VII protected activity, did not prohibit him from fulfilling the essential functions of a JSO. As stated many JSO's were assigned to duties that accommodated their disabilities while still working as a JSO. Moreover, the accommodations requested by Grant and his doctors were not overly burdensome for Defendant as it had accommodated him by giving him other JSO assignments that did not require prolonged walking or standing.

29. Though Defendant claimed Samuel was terminated, Samuel abruptly resigned without notice or cause on the day he was supposed to be terminated. Defendant accepted his resignation

and rewarded Samuel. Samuel can tell future employers that he resigned but Grant must disclose his termination.

30. In October 2013, Grant was on constant watch of a resident when his supervisor, an admitted friend of Samuel, accused Grant of changing a code on the form. At the time of the incident, Grant did not know it was a problem. It was noted by JSO Supervisor Alfred. Alfred told Grant to write an exception report. Grant complied. He explained his pen malfunctioned during a time entry and he corrected the mistake. Thinking it was no problem or unlike many employees who had errors on observation logs, Grant worked for at least three weeks with no allegation of wrongdoing for the mistake.

31. In mid-November 2013, Defendant called Grant into the office and told him that he had falsified a document and terminated him. Though falsification of the document is considered misconduct, Defendant did not contest Grant's unemployment as it had others who it believed had engaged in misconduct before termination. Defendant believed any evidence gathered at a contested unemployment hearing could be used against it so it chose not to dispute it.

32. To bolster the termination, it added a violation of the use of the electronic device policy. Subsequently, Defendant admitted that regardless of the violation of the use of an electronic device, it would have made the same decision. This rendered this policy merely additional pretext to unlawful harassment and retaliation in case a lawsuit was filed. Defendant admitted that it believed a lawsuit would be filed.

33. Regardless, Johnson and other employees (including supervisors) had violated this policy many times. No employee was terminated solely for this violation. Grant kept his phone on him because he was constantly accused of things that were merely incidents used to build a file to terminate him. To support the harassment and retaliation, he believed it was in his best interest to

7

For Official Governmental Use Only - Do Not Disseminate to the Public: 80069089 - Page 7 of 10

keep it near in case a conversation needed to be recorded or a picture showing other violations needed to be taken. Grant was only trying to gather evidence to show retaliation and harassment in case of termination or other adverse actions. No residents were included in any of Grant's recordings.

34. After he was terminated, Defendant filed a second EEOC Charge and incorporated allegations in the first charge to show the continual nature of the retaliation and harassment.

35. Defendant's reasons for terminating him are pretextual and manufactured to conceal unlawful harassment and retaliation.

36. If Defendant had not harassed and retaliated against Grant, he would have received pay, pay increases, as well as other employment benefits.

37. Grant has no plain, adequate, or complete remedy at law to redress the wrongs experienced and is now suffering and will continue to suffer irreparable injury from the treatment by Defendant unless he is reinstated and/or in lieu of reinstatement compensated for future lost employment benefits.

38. Grant suffered, is now suffering, and will continue to suffer emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary losses as a direct result of Defendant's harassment and retaliation.

39. Grant will suffer future pecuniary losses as a direct result of Defendant's harassment and retaliation.

40. Defendant intentionally engaged in harassment and retaliation against Grant with malice or reckless indifference to his rights under Title VII as amended.

**Cause of Action**

41. Grant incorporates as if re-alleged herein paragraphs 1 through 40.

For Official Governmental Use Only - Do Not Disseminate to the Public: 80069089 - Page 8 of 10

42.     But for Grant engaging in protected activity, Defendant would not have subjected him to harassment (hostile work environment) or retaliated against him by terminating him. In doing so Defendant violated the anti-retaliation provision of Title VII.

**Prayer for Relief**

43.     Wherefore, Grant prays that this Court:

    a.     declare the conduct engaged in by Defendant to be in violation of his rights; enjoin Defendant from engaging in such conduct;

    b.     reinstate him to the position Juvenile Supervision Officer with all pay increases, seniority, and benefits as if he had not been terminated;

    c.     remove suspension from his record;

    d.     award him back pay, front pay, and other benefits lost because he was fired from November 2013 to present;

    e.     award him compensatory and punitive damages of $300,000.00;

    f.     award him monetary damages that were caused by the termination;

    g.     award prejudgment and post judgment interest;

    h.     award him reasonable costs and attorney's fees; and

    i.     grant such other relief as it may deem just and proper.

**Demand for Jury**

44.     Grant demands a jury trial.

For Official Governmental Use Only - Do Not Disseminate to the Public: 80069089 - Page 9 of 10

Respectfully submitted,

/s/ *Victoria Plante-Northington*
VICTORIA PLANTE-NORTHINGTON
Texas Bar No. 00798436
PLANTE LAW FIRM, P.C.
5177 Richmond Avenue Suite 1140
Houston, Texas 77056
Telephone: (713) 526-2615
Facsimile: (713) 513-5176
Email: victoria@plantelawfirm.com

**ATTORNEY FOR PLAINTIFF
OTIS GRANT**

For Official Governmental Use Only - Do Not Disseminate to the Public: 80069089 - Page 10 of 10

10



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   June 13, 2018


Certified Document Number:        80069089 Total Pages:  10


*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



# CHRIS DANIEL
## HARRIS COUNTY DISTRICT CLERK

ENTERED
VERIFIED

# Civil Process Pick-Up Form

### CAUSE NUMBER: ___201834687_____

ATY____X_____        CIV_____        COURT ___333___

| REQUESTING ATTORNEY/FIRM NOTIFICATION |
|---|
| ATTORNEY: ___Plante-Northington, Victoria__   PH: ___713-526-2615_____ |
| CIVIL PROCESS SERVER: _____ |
| PH: _____ |
| PERSON NOTIFIED SVC READY: _Nicole_____ DATE: 05-29-2018 |

Type of Service Document: _Citation_____     Tracking Number _73499509_____
Type of Service Document: _____     Tracking Number_____
Type of Service Document: _____     Tracking Number_____
Type of Service Document: _____     Tracking Number_____
Type of Service Document: _____     Tracking Number_____
Type of Service Document: _____     Tracking Number_____
Type of Service Document: _____     Tracking Number_____

Process papers prepared by: Walter Eldridge

Date: _05_-_25__-2018         30 days waiting _06__-_24__-2018

| Process papers released to: _Lalitta Maken_____ |
|---|
| (PRINT NAME) |
| _2819434822_ |
| (CONTACT NUMBER)     (SIGNATURE) |
| **CARLA CARRILLO** |
| Process papers released by: _____ |
| (PRINT NAME) |
| _____ |
| (SIGNATURE) |
| Date: _____, 2018   Time: _____ AM / PM |

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

For Official Governmental Use Only - Do Not Disseminate to the Public: 80198498 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   June 13, 2018


Certified Document Number:        80198498 Total Pages:  1




Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS




**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Cause No. 201834687

GRANT, OTIS                                IN THE DISTRICT COURTS OF

V.                                         HARRIS COUNTY, TEXAS

HARRIS COUNTY                              234 JUDICIAL DISTRICT


TRANSFER ORDER

It is ORDERED that the Harris County District Clerk transfer the above styled and numbered cause from the 234 District Court to the 333 District Court.

SIGNED Friday, May 25, 2018

_____
HON. MIKE ENGELHART
ADMINISTRATIVE JUDGE
CIVIL TRIAL DIVISION

Attraction Cause Number 201633933

GRANT, OTIS

v.

HARRIS COUNTY

File Court 333

JUDGMENT DATE: 11/30/2016            JUDGMENT TYPE: REMOVED TO FEDERAL COURT

CASE TYPE: EMPLOYMENT DISCHARGE

For Official Governmental Use Only - Do Not Disseminate to the Public: 80094347 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   June 13, 2018

Certified Document Number:        80094347 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**